IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOHN MADSEN, et al., )
)
                        Plaintiffs, )
)
vs. )
)
RUSSELL LEE JACOBY, et al., )
) No. 3:21-cv-00123-HRH
                        Defendants. )
_____)

O R D E R

Motion for Partial Summary Judgment

Plaintiffs/counterdefendants John Madsen, Stephan Lake Holdings, LLC, and Stephan Lake Adventures, LLC, (collectively "plaintiffs") move for partial summary judgment on defendants/counterclaimants' claims of fraudulent misrepresentation and misrepresentation, Counts IV and V of the counterclaim.[1] The motion is opposed.[2] Plaintiffs replied;[3] and, with leave of court, defendants served and filed a surreply.[4] Oral argument has been requested but is deemed unnecessary in light of the following discussion and ruling.

---

[1]Docket No. 26.

[2]Docket No. 31.

[3]Docket No. 35.

[4]Docket No. 39.

ORDER – Motion for Partial Summary Judgment     - 1 -

Facts

This statement of facts is taken from the parties' briefing and exhibits in support of and in opposition to the motion for partial summary judgment. The following statement of facts provides the underpinning for the court's conclusion that there are genuine issues of fact material to defendants' claims of fraudulent misrepresentation and misrepresentation as alleged in Counts IV and V of the counterclaim.

Plaintiff John Madsen is the sole member and manager of Stephan Lake Adventures, LLC ("SLA"), and Stephan Lake Holdings, LLC ("SLH").[5] According to plaintiffs, "SLA is a guided hunt/fishing outfitting company that hosts and administers large game hunts and fishing expeditions at Stephan Lake Lodge, a hunting lodge located in Talkeetna, Alaska."[6] Plaintiffs state that SLA "contracts with licensed guides and master guides to [perform] its business operations."[7] Plaintiffs further state that SLH is a holding company that owns real and personal property known collectively as the Stephan Lake Lodge.[8] Plaintiffs allege that for several years, Madsen, SLA, and SLH worked with an attorney to sell Madsen's hunting/outfitting business at Stephan Lake Lodge.[9]

---

[5]Complaint at 8-9, ¶¶ 2-3, Exhibit 1, Notice of Filing State Court Records, Docket No. 4-1; Answer and Counterclaim at 8, ¶ 4, Docket No. 9.

[6]Complaint at 9-10, ¶ 9, Exhibit 1, Notice of Filing State Court Records, Docket No. 4-1.

[7]Cunningham Affidavit at 2, ¶ 3, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

[8]Complaint at 10, ¶ 10. Exhibit 1, Notice of Filing State Court Records, Docket No. 4-1.

[9]Cunningham Affidavit at 1-2, ¶¶ 1-2, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

Defendants/counterclaimants (collectively "defendants") are Russell Lee Jacoby, Laura Mae Jacoby, Kaylee Lamae Jacoby, Jacob Lee Jacoby, Shawn Damien Morrison, and Dana Michelle Morrison.[10] In March 2020, Russell Lee Jacoby began to express interest in purchasing Madsen's business.[11] Defendants allege that Madsen represented he was selling a "turnkey" hunting and outfitting business, which included an existing client list, real property, a hunting lodge, hunting cabins, various personal property, machinery, equipment, land use rights to adjacent property, valid executory hunting guide contracts, and intellectual property.[12]

Defendants further allege that Madsen represented, both orally and in the later consummated Agreement for Purchase, Sale and Assignment of Membership Interests ("Purchase Agreement" or, as quoted, "Agreement"), that they would receive certain "deliverables" before or at closing of the sale of the business.[13] Defendants allege that the deliverables due under the Purchase Agreement included an existing client list for SLA and SLH for all past clients; contracts for booked hunters for 2021 and rollover hunts from 2020; and SLA/SLH websites, domain names, contacts, phone numbers, email addresses, and social media.[14]

---

[10] Answer and Counterclaim at 2, Docket No. 9.

[11] Cunningham Affidavit at 3, ¶ 6, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

[12] Answer and Counterclaim at 9-10, ¶ 12, Docket No. 9.

[13] Id. at 11, ¶ 18(a)-(e).

[14] Id. at 11, ¶ 18(a)-(b), (e).

ORDER – Motion for Partial Summary Judgment        - 3 -

On approximately October 9, 2020, defendants entered into the Purchase Agreement with plaintiffs.[15] The Purchase Agreement contains various provisions, including some that specifically relate to the provision of a client list, hunt contracts, and social media accounts. In regard to the client list and hunt contract deliverables, the Purchase Agreement states that the "[e]xisting client list for SLA and SLH for all past clients" and the 2021 hunt contracts "in Sellers' possession for booked hunters for 2021 and rollover hunts from 2020" will be delivered at closing.[16] Additionally, the Purchase Agreement states that in regard to the hunt contracts, "[t]he Parties acknowledge that in 2020, SLA has booked hunts that are scheduled to be serviced by SLA in 2021, and that those hunters have paid for the 2021 hunts in whole or in part...."[17]

At closing, documents purporting to be the client list and hunt contract deliverables were provided to defendants as exhibits to the Purchase Agreement. Plaintiffs provided a list of several rollover hunts from 2020 and contracted hunts for 2021.[18] According to plaintiffs, they also provided an "existing SLA/SLH client list in John Madsen's possession, comprising numerous 'Registered Guide/Outfitter Hunt Records' with client information."[19] As another exhibit, plaintiffs provided copies of the "2021

---

[15]Complaint at 9, ¶ 8, Exhibit 1, Notice of Filing State Court Records, Docket No. 4-1.

[16]October 2020 Sale and Purchase Agreement at 77-78, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

[17]Id. at 79-80.

[18]October 2020 Sale and Purchase Agreement: list of rollover and paid hunts at 175-76, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

[19]Cunningham Affidavit at 5, ¶ 13, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3; Guide/Outfitter Hunt Records at 2-24, Exhibit 4, Motion for Partial Summary Judgment, Docket No. 26-4.

ORDER – Motion for Partial Summary Judgment - 4 -

Booked and rollover hunt contracts," which included guide contracts, invoices, and trip contracts from a travel consulting agency.[20] The guide contracts are primarily signed by the clients but not the registered guide-outfitters, with several exceptions: a contract from a 2019 hunt; two contracts for September 2020 hunts; and one contract for a September 2021 hunt.[21] The trip contracts from the travel consulting agency are wholly unsigned.[22] Also included as an exhibit to the Purchase Agreement was a list of "Existing Deals/Cont[r]acts/Expectations/Bartered Agreements/Oral Agreements/Debts," which includes "deals, expectations, bartered agreements, oral agreements and debts."[23]

As noted above, the Purchase Agreement also contains provisions regarding social media. "SLA shall retain, for Buyers' benefit and use, all SLA/SLH websites, domain names, contacts, phone numbers, email addresses, printed advertising and marketing materials, social media including but not limited to YouTube, Facebook, Instagram, photos, vendor lists and related information, all vendor contracts, leases and related materials and information...."[24]

Notwithstanding the terms of the Purchase Agreement, defendants now claim that plaintiffs failed to provide the above-listed deliverables on or prior to the November 13,

---

[20]Cunningham Affidavit at 5, ¶ 13, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3; 2021 Booked and Rollover Hunt Contracts at 25-94, Exhibit 4, and 1-15, Exhibit 5, Motion for Partial Summary Judgment, Docket Nos. 26-4 and 26-5.

[21]2021 Booked and Rollover Hunt Contracts at 26-94, Exhibit 4, and 1-15, Exhibit 5, Motion for Partial Summary Judgment, Docket Nos. 26-4 and 26-5.

[22]Id.

[23]Cunningham Affidavit at 5, ¶ 13, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3; List of Existing Deals/Contracts/Expectations [etc.] at 17, Exhibit 5, Motion for Partial Summary Judgment, Docket No. 26-5.

[24]October 2020 Sale and Purchase Agreement at 81, Exhibit 3, Motion for Partial Summary Judgment, Docket No. 26-3.

2020, closing date, in breach of the Purchase Agreement.[25]  Defendants contend that several items were not provided, including an existing client list; valid contracts for booked hunts; and access to intellectual property, including the primary website and social media accounts.[26]

Defendants claim that after November 13, "it became evident ... that Plaintiffs would not be performing as required by the Agreement."[27]  "[I]t became evident to Defendants that Madsen never had any intention of performing when considering all the facts and circumstances" (emphasis omitted).[28]  This is so, defendants argue, for various reasons, including that Madsen stated that he did not keep a client list and that defendants could obtain such information from Alaska Fish and Game; the contracts for booked 2021 hunts and rollover 2020 hunts were not valid and binding as they were unsigned by SLA's sole registered guide; and intellectual property was never produced and Madsen knew he would be unable to transfer access to SLA's Facebook, Twitter, and YouTube accounts.[29]  Defendants' allegations as to Madsen's intentions are based primarily on a recorded phone call that occurred on December 9, 2020.

In regard to the hunt contracts, Madsen explained to defendants during the December 9 phone call that the terms of his agreement with his master guide, Nick Pierskalla, "were [that] he would sign my contracts.  He would ... assist in the outfitting.

---

[25]Answer and Counterclaim at 12, ¶ 21, Docket No. 9.

[26]Id. at 12, ¶ 22.

[27]Id. at 12, ¶ 23.

[28]Id. at 12, ¶ 24.

[29]Id. at 12-15, ¶ 24(a)-(e).

ORDER – Motion for Partial Summary Judgment - 6 -

He would scout. He would obviously take all the responsibility."[30] Madsen explained that Pierskalla essentially writes the client contracts and signs them with the clients, once the clients are at the lodge.[31] "I'm a booking agent for a hotel, that's all I am. Nick is the outfitter. ...When I get a client, if it's through a booking agent, I don't make another contract under Stephan Lake Adventures because they've already got a contract with a booking agent. Then, that guy comes to the lodge and Nick does the contract with them to be legal in the bush and I take the money."[32] He also explained that Pierskala kept copies of the signed contracts and also provided them to the state, but that he did not share those with Madsen.[33] Madsen also explained that defendants only received rollover hunt contracts in his possession and not the contracts drafted by booking agents because "they write their own contracts."[34]

As to these hunt contracts, defendant Shawn Damien Morrison has since averred that "Madsen [assured us] that Mr. Pierskala would continue to remain employed because of his contractual obligations as the master guide for the hunting contracts that were in place."[35] Morrison and co-defendant Russell Lee Jacoby have further averred that there was no way to ensure that Pierskalla would continue to serve as the master guide for SLA after the sale: "Madsen represented to us that Mr. Pierskala was already under contract

---

[30]December 9, 2020, phone call at 7, Exhibit 2, Motion for Partial Summary Judgment, Docket No. 26-2.

[31]Id. at 13.

[32]Id. at 13-14.

[33]Id.

[34]Id. at 11.

[35]Shawn Damien Morrison Affidavit at 4, ¶ 7, Opposition to Motion for Partial Summary Judgment, Docket No. 31-2.

ORDER – Motion for Partial Summary Judgment - 7 -

with the clients for the 2021 hunts and the 'rollover hunts' from 2020 and thus he was bound by contract to continue. This was false. ...There were no binding contracts, and Madsen knew it."[36]

On the December 9 phone call, Madsen also explained how he compiled a client list. He requested all of Pierskala's clients, and Pierskala then provided him client information for 2019, which was the only information he possessed at the time.[37] Madsen explained that defendants therefore received a list of "all the past clients that [he had] information on" and that it would be impossible to provide information on all past clients, as there are some past clients for whom "there's no paperwork on whatsoever."[38] He explained that if defendants wanted Pierskala's pre-2019 information, defendants could request the information from Alaska Fish and Game.[39] However, Madsen also explained that defendants would still be unable to obtain any client information that originated from a different guide he previously employed because that guide likely never submitted client information to the state.[40]

The parties also discussed the social media due under the Purchase Agreement during the same December 9 phone call. Madsen told defendants: "I have no social media anything. I have no Twitter, ... no Facebook. The Facebook account that was set

---

[36]Russell Lee Jacoby Affidavit at 7, ¶¶ 21-22, Opposition to Motion for Partial Summary Judgment, Docket No. 31-1; Shawn Damien Morrison Affidavit at 8, ¶ 21, Opposition to Motion for Partial Summary Judgment, Docket No. 31-2.

[37]December 2020 phone call recording at 14, Exhibit 2, Motion for Partial Summary Judgment, Docket No. 26-2.

[38]Id. at 14-15.

[39]Id.

[40]Id. at 15.

ORDER – Motion for Partial Summary Judgment - 8 -

up was done by an employee five, six years ago. We have no idea where the password is."[41] Madsen elaborated that he did not have the name and contact information for the employee who created the Facebook account and that he was previously unable to remove the Facebook page.[42] He explained that he had "never set up a Facebook account ... never set up ... a Twitter account. The only thing I have ever done is create a website through [another individual]."[43] Madsen also told defendants that they "ha[d] use" of the Facebook account, even though he couldn't provide the password for the account or the name of the person who had created the account.[44] According to Madsen, the Facebook account generated no business for the lodge or its outfitting operations; but, notwithstanding, Madsen offered to recreate the Facebook account at his expense.[45]

Plaintiffs reiterated the status of their social media accounts in a December 2020 email from their attorney to defendants, wherein they also offered to share the password for the new Facebook page, once it was created, and further informed defendants that SLA had no other social media accounts, such as Instagram[46] or Twitter.[47] In a response to requests for admission, plaintiffs stated that they did not have access to any social

---

[41]Id. at 19.

[42]Id.

[43]Id. at 19-20.

[44]Id. at 20.

[45]Cunningham Affidavit at 9-10, ¶ 25(d), Exhibit 3, Motion for partial summary judgment, Docket No. 26-3.

[46]However, defendants apparently located an Instagram account for Stephen Lake Lodge in October 2020. See text messages at 1, Exhibit 4, Reply in Support of Motion for Partial Summary Judgment, Docket No. 35-4.

[47]December 13, 2020, Cunningham email at 41, Exhibit 5, Motion for Partial Summary Judgment, Docket No. 26-5.

media accounts for SLA when they entered into the Purchase Agreement.[48] Plaintiffs have since admitted that Stephan Lake Lodge also has a YouTube channel.[49]

Defendants allege that on December 14, 2020, they provided plaintiffs with formal written notice that the Purchase Agreement was being immediately terminated, voided, and rescinded.[50] Plaintiffs then filed a complaint alleging breach of contract and breach of the covenant of good faith and fair dealing.[51] In answering, defendants also counterclaimed, alleging breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, fraudulent misrepresentation, and misrepresentation.[52]

In support of the fraudulent misrepresentation claim, defendants specifically claim that "Plaintiffs' representations that Madsen intended to perform, and was capable of performing, the obligations set forth in the Agreement, including providing the Deliverables, were false and material"; "Madsen knew that he had no intention of performing the obligations and/or that would [sic] be incapable of performing when Plaintiffs made the representations to Defendants"; "Plaintiffs knowingly made these false misrepresentations of material fact for the purpose of inducing Defendants to enter into the Agreement and/or to cause Defendants rely [sic] on the misrepresentations"; and "Defendants justifi-

---

[48]Plaintiff's Responses to Defendants' First Set of Requests for Admission at 4, Exhibit 8, Opposition to Motion for Partial Summary Judgment, Docket No. 31-8.

[49]Scott LeFebvre Affidavit at 3, ¶ 10, Exhibit 1, Reply in Support of Motion for Partial Summary Judgment, Docket No. 35-1. See also Surreply in Support of Opposition to Motion for Partial Summary Judgment at 6, Docket No. 39.

[50]Answer and Counterclaim at 16, ¶ 30, Docket No. 9.

[51]Complaint at 12-13, ¶¶ 19-29, Exhibit 1, Notice of Filing State Court Records, Docket No. 4-1.

[52]Answer and Counterclaim at 16-21, ¶¶ 31-65, Docket No. 9.

ORDER – Motion for Partial Summary Judgment - 10 -

ably relied upon Plaintiffs' misrepresentations, which directly and proximately caused Defendants to suffer damages."[53]

In support of the misrepresentation claim, defendants allege the following: "Plaintiffs' representations that Madsen intended to perform, and was capable of performing, the obligations set forth in the Agreement, including providing the Deliverables, were false and material"; [t]o the extent the representations were not made fraudulently, Madsen made the representations negligently"; "Madsen knew or should have known that he would be unable to perform the obligations set forth in the Agreement as he represented, and continued to represent, to Defendants"; "[a]s a result of Plaintiffs' misrepresentations, made by and through Madsen, Defendants were induced to enter into the Agreement and justifiably relied on the misrepresentations made by Madsen"; and "[b]ut for the misrepresentations by Madsen, Defendants would not have entered into the Agreement and/or suffered damages and/or incurred attorneys' fees and costs."[54]

Plaintiffs now move for summary judgment on the fraudulent misrepresentation and misrepresentation causes of action in defendant's counterclaim.[55] Plaintiffs move for summary judgment on the grounds that "there are no genuine issues of material fact about Mr. Madsen's intention to consummate the sale with Defendants."[56] That is, plaintiffs claim that Madsen's mental state, or scienter, is not genuinely disputed and that they are therefore entitled to summary judgment on these claims.

---

[53]Id. at 19-20, ¶¶ 52-55.

[54]Id. at 20-21, ¶¶ 61-65.

[55]Motion for Partial Summary Judgment at 1, Docket No. 26.

[56]Id. at 16.

Applicable Law

Rule 56(a), Federal Rules of Civil Procedure, provides that upon motion, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of proving that no material fact is disputed. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets that burden, then the non-moving party must present facts that indicate a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The nonmoving party "must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth." Millo v. Delius, 872 F. Supp. 2d 867, 872 (D. Alaska 2012) (citing Anderson, 477 U.S. at 248-49). The court must draw "all justifiable inferences" in the nonmoving party's favor. Anderson, 477 U.S. at 255. A material fact is genuinely disputed if the evidence is such as would permit a reasonable fact finder to return a verdict for the nonmoving party. Id. at 248.

In Alaska, a cause of action for fraudulent or intentional misrepresentation includes the following elements: (1) misrepresentation of fact of intention; (2) made fraudulently, or with knowing falsity or scienter; (3) for the purpose of inducing reliance; (4) justifiable reliance by the recipient; (5) causing loss or damages. Lightle v. State, Real Estate Com'n, 146 P.3d 980, 983 (Alaska 2006); Jarvis v. Ensminger, 134 P.3d 353, 363 (Alaska 2006). The scienter element is satisfied when the speaker "'knows or believes that the matter is not as he represents it to be,' 'does not have confidence in the accuracy of his representation that he states or implies,' or 'knows that he does not have the basis for his representation that he states or implies.'" Anchorage Chrysler Cntr., Inc.

ORDER – Motion for Partial Summary Judgment - 12 -

v. DaimlerChrysler Corp., 129 P.3d 905, 914 n.21 (Alaska 2006) (quoting Restatement (Second) of Torts § 525 (1977)).

The tort of negligent misrepresentation is comprised of four elements: (1) the speaker made a statement in the course of business, employment, or other enterprise in which the speaker had a pecuniary interest; (2) which was false at the time is was made; (3) the opposing party justifiably and detrimentally relied on the statement; and (4) the speaker failed to exercise reasonable care when making the statement. S. Alaska Carpenters Health and Sec. Tr. Fund v. Jones, 177 P.3d 844, 857 (Alaska 2008). Scienter is not element of the tort of negligent misrepresentation. Thus, plaintiffs' request for summary judgment, which is only based on Madsen's alleged lack of scienter, does not bear on defendants' misrepresentation claim, to the extent that it sounds in tort.

## Discussion

The court takes up first plaintiffs' motion for partial summary judgment as to defendants' fraudulent misrepresentation claim. There is a genuine and material disagreement between the parties as to the sufficiency of the evidence supporting the scienter/intent prong of defendants' Count IV alleging fraudulent misrepresentation. The parties do not dispute the sufficiency of the evidence supporting the other elements of that claim. Plaintiffs argue that "the [Purchase] Agreement was consummated. All the available evidence demonstrates that was consistent with Plaintiffs' scienter or intent."[57] Plaintiffs dispute defendants' interpretation of the nature and status of certain deliverables

---

[57] Motion for Partial Summary Judgment at 16, Docket No. 26.

ORDER – Motion for Partial Summary Judgment - 13 -

due under the agreement, including the "existing client list," contracts for booked hunts, and social media accounts.[58]

Defendants oppose. They contend that there exist genuine issues of material fact regarding their fraudulent misrepresentation claim.[59] They argue that Madsen knowingly made misrepresentations of material fact to induce them to enter into the Purchase Agreement.[60] Specifically, they argue that Madsen knew: "there was no 'existing client list for SLA and SLH for all past clients'" and that the list was not confidential; there existed no binding hunt contracts; and that Madsen was aware that there existed no social media accounts prior to entering into the Agreement.[61] Further, they argue that plaintiffs' efforts to sell the business over a multi-year period "does not show that Plaintiff Madsen was going to be honest regarding his representations during the sale of his [b]usiness; if anything, it shows that Madsen was desperate to sell the [b]usiness and would have said or done anything to make it happen. ...This case clearly turns on the credibility of the litigants regarding the foregoing disputed issues of material fact."[62]

Madsen's knowledge of the nature and content of deliverables which were to be produced by plaintiffs at closing present a genuine and material dispute. There is evidence in the record sufficient to support defendants' claim that plaintiff Madsen fraudulently, with knowing falsity, made misrepresentations about the SLA/SLH social media

---

[58]Reply in Support of Motion for Partial Summary Judgment at 5-16, Docket No. 35.

[59]Opposition to Motion for Partial Summary Judgment at 10, Docket No. 31.

[60]Id. at 11.

[61]Id. at 11-14; Surreply in Support of Opposition to Motion for Partial Summary Judgment at 3-6, Docket No. 39.

[62]Opposition to Motion for Partial Summary Judgment at 15-16, Docket No. 31.

ORDER – Motion for Partial Summary Judgment - 14 -

accounts and client list(s) which were to be produced at closing in accordance with the Purchase Agreement. Madsen's mental state is at the heart of the dispute between the parties. This scienter issue will indeed turn upon the fact-finder's appraisal of the credibility of plaintiff Madsen and the Jacoby defendants.

Plaintiffs' motion for partial summary judgment as to the defendants' fraudulent misrepresentation claim, Count IV, is denied.

The court now turns to plaintiffs' motion for partial summary judgment as to defendants' misrepresentation claim, Count V.

Plaintiffs argue, as they did concerning the fraudulent misrepresentation claim, that the record contains no evidence that Madsen acted with scienter.[63] Plaintiffs also argue that defendants cannot "claim that prior to the execution of the Agreement Mr. Madsen ... made misrepresentations that were material to the execution of the Agreement."[64] Both arguments are misplaced.

While scienter is one of several necessary elements of a fraudulent misrepresentation claim, it is not an essential element of a claim for misrepresentation.

As set out above, the tort of negligent misrepresentation has four elements. It is not disputed that the defendants had a pecuniary interest in the dealings between the parties, or that defendants justifiably and detrimentally relied upon statements made in the Purchase Agreement. As with the fraudulent misrepresentation claim, there are genuine, material disputes as to whether the plaintiffs misrepresented the deliverables which would be available at closing. The evidence suggests that the alleged misrepresentations regard-

---

[63]Motion for Partial Summary Judgment at 6, 16, Docket No. 26; Reply in Support of Motion for Partial Summary Judgment at 16-17, Docket No. 35.

[64]Reply in Support of Motion for Partial Summary Judgment at 3, Docket No. 35.

ing social media and client list deliverables were material because these deliverables are explicitly described in the text of the Purchase Agreement as included in the sale of SLA/SLH.

The question of whether or not the deliverables were negligently misrepresented depends in part on the question of whether or not plaintiffs exercised reasonable care in describing the deliverables which were to be exchanged at closing. The exercise of reasonable care is a quintessential fact inquiry, as to which summary judgment is not available.

Plaintiffs have not carried their burden of showing that no material fact is genuinely in dispute as regards the terms of the Purchase Agreement and/or defendants' misrepresentation claim. Plaintiffs' motion for partial summary judgment on defendants' misrepresentation claim, Count V, is denied.

## Conclusion

Plaintiffs' motion for partial summary judgment is denied. Plaintiffs' request for oral argument is also denied.

DATED at Anchorage, Alaska, this  11th  day of July, 2022.

/s/   H. Russel Holland
United States District Judge